UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEANETTE BLACKSHEAR, et al.,

    Plaintiffs,

v.   Civ. Action No. 10-3585 (KSH)

SYNGENTA CROP PROTECTION, INC., et al.,

    Defendants.   **OPINION**

**Katharine S. Hayden, U.S.D.J.**

I.   Introduction

Plaintiff Jeanette Blackshear ("Blackshear") filed this suit on behalf of herself individually, as administrator of her late husband's estate, and as guardian *ad litem* for her minor children. The complaint alleges that her husband became ill and died as a result of exposure to toxic chemicals while he was employed as an exterminator for defendant Corbett Exterminating ("Corbett"). In this motion to dismiss, Corbett argues that the complaint must be dismissed pursuant to the workers' compensation bar of New Jersey's Workers' Compensation Act.

II.   Facts and Procedural History

A.   The Pleaded Facts

Because this matter is before the Court as a motion to dismiss, the facts are drawn from plaintiff's complaint. Specifically, this Court will refer to plaintiff's *third* amended complaint. Plaintiff filed a fourth amended complaint after Corbett filed this motion, but that new complaint only added new parties; it did not alter the allegations against Corbett. Therefore, for the sake of

1

consistency with the parties' briefs and because the third amended complaint was operative when this motion was filed, this Court will refer to the third amended complaint.

From October 1996 through December 2007, plaintiff's husband, Keith Blackshear ("decedent"), worked as an exterminator for Corbett, a company "engaged in the business of extermination of insects, rodents and other pests." (Third Am. Compl., Facts, ¶¶ 14, 17.) As part of its extermination business, Corbett purchased many toxic chemicals from the co-defendants in this case. (Third Am. Compl., First Count, ¶ 3.)

In the eleven years decedent worked for Corbett, he suffered direct exposure to these chemicals, which he used on a near-daily basis. (Third Am. Compl., Eighth Count, ¶2.) Corbett and the co-defendants exacerbated the harm from this exposure by "intentionally and fraudulently conceal[ing] from . . . decedent the hazardous nature of, or in the alternative, the extent of the hazardous nature of the . . . chemicals and substances." (*Id.* ¶ 3.)

In addition, Corbett "willfully, deliberately, and intentionally failed to provide . . . decedent with proper training, equipment, or clothing in order to safely work with and be exposed to the said chemicals and substances." (*Id.*) Specifically, Corbett often provided decedent with only a paper mask; did not provide him "a NIOSH-certified combination air-purifying respirator" or "a pressure demand atmosphere-supplying respirator"; did not provide him "a respirator with an organic cartridge"; and did not provide him with "chemical resistant gloves, overalls, socks, footwear, and/or headgear." (*Id.* ¶¶ 5–9.) Plaintiff asserts that it was "palpably unreasonable" for Corbett to fail to provide these items to decedent "[g]iven the nature of the chemicals and substances" that Corbett knew decedent would be using. (*Id.* ¶ 10.) Plaintiff further asserts that these actions and omissions eventually caused decedent's sickness

and death, and that Corbett "well knew [these actions and omissions] created a substantial or virtual certainty of the illness and death of" decedent. (*Id.* ¶ 11.)

B. Procedural History

This case includes a lengthy procedural history mostly relating to the twelve named co-defendants not relevant to this motion.

Plaintiff filed this wrongful death and survivorship case in New Jersey Superior Court, Middlesex County, on February 11, 2009. [D.E. 1.] Plaintiff later filed an amended complaint that added defendant LipaTech, Inc. to the case. [D.E. 1.] On July 15, 2010, LipaTech, Inc. removed the case to federal court. [D.E. 1.]

On September 28, 2010, plaintiff filed a second amended complaint. [D.E. 38.] On November 12, 2010, Corbett filed a motion to dismiss the complaint. [D.E. 67.] That motion was administratively terminated after plaintiff filed a third amended complaint on March 11, 2011. [D.E. 89, 91.] On March 25, 2011, Corbett re-filed its motion to dismiss, this time against the third amended complaint. [D.E. 105.] On October 21, 2011, plaintiff filed a fourth amended complaint. [D.E. 181.]

Because Corbett is a New Jersey corporation and plaintiff is a New Jersey resident, this case lacks complete diversity. To address this issue, Magistrate Judge Shwartz entered an order that "if the motion to dismiss is denied, then the United States District Judge may remand the case to New Jersey Superior Court." [D.E. 36.] If Corbett is dismissed, complete diversity will exist and the case will remain before this Court.

3

III. Standard of Review

*Federal Rule of Civil Procedure* 8(a)(2) provides that a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The Court "must accept as true all of the allegations contained in a complaint," provided that they are genuine factual allegations and not just masked legal conclusions. *Iqbal*, 129 S. Ct. at 1949–50.

IV. The Workers' Compensation Bar

Corbett argues that plaintiff's claim is barred under the exclusivity rules of the New Jersey's Workers' Compensation Act.

A. Framework

"The Workers' Compensation System has been described as an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." *Laidlow v. Hariton Mach. Co., Inc.*, 170 N.J. 602, 605 (2002) (citing *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 174 (1985)). But that trade-off is not absolute. The Workers' Compensation Act provides that "[i]f an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed,

4

*except for intentional wrong.*" N.J.S.A. 34:15-8 (emphasis added); *see also Laidlow*, 170 N.J. at 606 ("[A]n employer who causes the death or injury of an employee by committing an 'intentional wrong' will not be insulated from common-law suit."). The determination of whether the employer committed an "intentional wrong" depends on the application of a two-prong test.

> [I]n order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.
>
> *Id.* at 617.

The first prong of this test is known as the "conduct" prong, and the second prong is known as the "context" prong. *Mull v. Zeta Consumer Prods.*, 176 N.J. 385, 391 (2003).

   B.  The Conduct Prong

For Corbett to fall within the exception, plaintiff must first demonstrate that Corbett knew its actions were "substantially certain to result in injury or death to the employee." *Laidlow*, 170 N.J. at 617. In evaluating this factor, this Court must consider "that every undertaking, particularly certain business judgments, involve some risk" and that "[t]he distinctions between negligence, recklessness, and intent are obviously matters of degree, albeit subtle ones." *Id.* at 178. Therefore, to ensure that the Workers' Compensation Act "is not circumvented simply because a known risk later blossoms into reality[, this Court] must demand a virtual certainty" before finding the "intentional wrong" exception applicable. *Id.*

5

Some examples are helpful to understand the contours of this rule. In *Millison*, the New Jersey Supreme Court held that even though defendants knowingly exposed plaintiffs to asbestos, "the mere knowledge and appreciation of a risk — even the strong probability of a risk — will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute." *Id.* at 179.

In *Laidlow*, the plaintiff's job "required him to work with a rolling mill" by "manually inserting the bars into a 'channel' that guided them into the mill." 170 N.J. at 607. His glove got stuck in an unguarded nip point and his hand was pulled into the rollers, causing severe injury. *Id.* Observing that the company kept a safety guard inactive almost all the time, and that the plaintiff and another employee previously "experienced close calls with the nip point of the unguarded mill," the Court concluded that persuasive evidence existed "that [defendant] knew not only that injury was substantially certain to occur, but also that when it did occur it would be very serious." *Id.* at 620, 622.

Similarly, in *Mull*, plaintiff's hand was severely injured while she was dislodging plastic from a jammed winder. 176 N.J. at 387–88. Prior to the accident, defendant had disengaged the winder's safety devices and been cited by the Occupational Safety and Health Administration ("OSHA") for failure to provide employees with procedures "to control the release of hazardous energy when a worker is servicing or performing maintenance on equipment or machinery." 176 N.J. at 388. Because plaintiff's expert provided evidence that defendant's conduct made this type of harm predictable, the Court held that the conduct prong was met. *Id.* at 392.

Here, the complaint alleges that Corbett knew and intentionally concealed "the hazardous nature of [or] the extent of the hazardous nature of" the chemicals that decedent used in his

6

work.[1]  (Third Am. Compl., Eighth Count, ¶¶ 3, 10.)  The allegations in this complaint adequately claim that Corbett knew the risk inherent in the use of these chemicals, did not disclose that risk to decedent, and did not supply him with certain safety equipment.  Corbett is an exterminating company, making plausible the inference that it knew about the chemicals it used and the hazards those chemicals posed.  It is thus not a mere conclusion, but a factual assertion that plaintiff is making when she states that Corbett knew the risks inherent in decedent's daily exposure to the chemicals.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (holding that after disregarding "allegations that 'because they are no more than conclusions, are not entitled to the assumption of truth,'" court must "assume [the veracity" of all factual allegations to determine whether plaintiff is entitled to relief (quoting *Iqbal*, 129 S. Ct. at 1950)).

      Moreover, the allegations suggest that Corbett knew the risks and withheld them from employees.  "There is a difference between, on the one hand, tolerating in the workplace conditions that will result in a certain number of injuries and illnesses, and, on the other, actively misleading the employees who have already fallen victim to those risks of the workplace."  *Millison*, 101 N.J. at 182.  The complaint sufficiently pleads that Corbett knew decedent's illness and death were "substantially certain" to occur under the circumstances.  Accordingly, plaintiff's pleadings satisfy the conduct prong of the intentional wrong test.

---

[1] In her opposition to this motion, plaintiff attached three exhibits: her certification regarding the events surrounding her husband's death, the Material Safety Data Sheets that Corbett received from its suppliers, and expert reports linking the chemicals to decedent's illnesses.  These documents would be relevant to deciding a motion for summary judgment, but they do not help demonstrate the complaint's sufficiency.

C. <u>The Context Prong</u>

The context prong of the intentional wrong test requires that "the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize." *Laidlow*, 170 N.J. at 617.

A review of the New Jersey Supreme Court's application of this prong reveals that it operates as an inquiry into whether the injury occurred as a result of ordinary foreseeable work hazards in the plaintiff's field or as a result of some abnormally unsafe employer practice. For example, in *Millison*, defendants concealed asbestos-related injuries discovered through company physical examinations, and the Court held that the deception prevented employees from protecting their health and was not the type of conduct that the Legislature could have intended to bar from civil suit. 101 N.J. at 182. But in the same case, the mere presence of asbestos in the workplace and the failure to inform plaintiffs of its presence were insufficient to satisfy the context prong because "the legislature's awareness of occupational diseases as a fact of industrial employment" suggested that the "resulting occupational diseases must be considered the type of hazard of employment that the legislature anticipated would be compensable under" the Workers' Compensation Act. *Id.* at 180.

In *Laidlaw*, the employer removed a safety device from a machine and put it back in place only when OSHA inspected the premises, and the Court held that "the Legislature would never consider such actions or injury to constitute simple facts of industrial life." 170 N.J. at 622. Similarly, in *Mull*, the Court held that defendant's removal of a winder's safety devices was also outside what the Legislature would have considered "simple facts of industrial life." 176 N.J. at 392–93 (quoting *Laidlow*, 170 N.J. at 622).

8

Here, plaintiff alleges that Corbett understood the hazardous nature of the chemicals but failed to provide decedent with the equipment necessary to ensure his safety. (Third Am. Compl. ¶ 10.) The complaint further suggests that Corbett withheld information about these risks from decedent. (*Id.* ¶ 3.) Taken as true, this allegation indicates not only that Corbett turned a blind eye to the risks inherent in the use of the chemicals but actually went as far as to hide those risks so that decedent would not know they existed. Such concealment is hardly an expected fact of life in industrial employment, and accordingly, this Court finds that it is not the type of risk that the New Jersey Legislature likely envisioned as being barred under the Workers' Compensation Act. Although exposure to the chemicals was an ordinary fact of life in decedent's line of work as an exterminator, a deliberate concealment of the chemicals' risk "violates the social contract so thoroughly" that it falls outside the Act's bar. *Laidlow*, 170 N.J. at 622.

The complaint sufficiently pleads information necessary to satisfy both prongs of the "intentional wrong" exception. Accordingly, this Court cannot find the exception inapplicable as a matter of law, and the motion to dismiss is denied.

V. Conclusion

For the foregoing reasons, the motion to dismiss is denied. As set forth in Magistrate Judge Shwartz's order of September 22, 2010 [D.E. 36], Corbett's continued presence as a party to this suit means that complete diversity does not exist, and the case is remanded to state court. An appropriate order will follow.

/s/ Katharine S. Hayden

October 31, 2011                                            Katharine S. Hayden, U.S.D.J.